OIVA *v.* CALUMET & HECLA MINING CO.

1. MINES AND MINING—MASTER AND SERVANT—RISKS ASSUMED—INSPECTION—FALL OF ROCK.

As matter of law, a miner employed as a trammer assumed the risk directly connected with his work, that notwithstanding proper inspection at reasonable intervals material might become dislodged and descend upon him.[1]

2. SAME—TRIAL—REQUESTS—PERSONAL INJURIES.

It was not erroneous to refuse plaintiff's requests to charge the jury that the miner was not charged with the duty of inspecting the walls and timbering, or with the knowledge of defects that he did not know of, where the court charged that he was not required to make any examination, inspection or test of the hanging walls, and that the defendant was bound to make such inspections, and was liable for negligence of the persons so inspecting the mine.

3. SAME—CHARGE—CONTRIBUTORY NEGLIGENCE.

*Held*, also, that the charge of the court on the subject of contributory negligence was not erroneous.

---

[1] As to servant's assumption of obvious risks of hazardous employment, see note in 1 L. R. A. (N. S.) 272.

On the question of servant's assumption of risk from changing condition of the working place during progress of the work, see notes in 19 L. R. A. (N. S.) 340 and 28 L. R. A. (N. S.) 1267.

4. SAME—ASSUMPTION OF RISK—BURDEN OF PROOF.
    It is a general rule that the master has the burden of
    showing that an employee, injured in consequence of an
    unusual hazard due to negligence, knew of the unusual
    dangers.

5. SAME—TRIAL—CHARGE.
    *Held*, also, that the charge was not argumentative or un-
    duly favorable to the defendant: and it sufficiently sub-
    mitted the issue that the plaintiff claimed he had been
    assured by his superior servant that the place of work was
    safe.

Error to Houghton; Flannigan, J., presiding. Sub-
mitted November 20, 1913. (Docket No. 98.) De-
cided March 26, 1914.

Case by Charles Oiva against the Calumet &
Hecla Mining Company for personal injuries. Judg-
ment for defendant. Plaintiff brings error. Af-
firmed.

*Le Gendre & Driscoll*, for appellant.

*Allen F. Rees (Rees, Robinson & Petermann*, of
counsel), for appellee.

OSTRANDER, J. Although the record is a consider-
able one, and the assignments of error are numerous,
the case presented for review is not complicated, and
its decision depends principally upon whether the
court properly instructed the jury. The plaintiff,
working with a single partner on the night shift in
defendant's mine as a trammer, was injured by a
piece of rock which fell from the wall of the stope at
the foot of which he was working. In operating the
mine, different classes of employees have different
duties, and it does not appear from this record that
the duties of one class overlapped those of another.
There are miners who drill and blast, timbermen who
construct and maintain structures necessary to sup-
port the walls, men whose duty it is to inspect the

walls and break down material which appears to be loose and in danger of falling. Plaintiff's duty was to load material from the mills at the foot of the stopes into a tram car and push the tram car to a hoist, and it is not claimed that he was charged with any duty to inspect the walls or timbers, or to do anything except to remove the material from the mills. As matter of law he assumed risks directly connected with his work, among them the risk that, notwithstanding skillful inspection of the walls at proper intervals, material might become dislodged from the wall of the mine and go down a stope into the mills at the foot of the stope. He was a foreigner, 20 years of age, had been employed in another mine as a timberman, and in defendant's mine for 3 months as a trammer. He was never employed as a miner. It must be assumed from his testimony that risk from falling rock, notwithstanding proper inspection and barring down of material, is one which he appreciated and assumed.

It is the theory of plaintiff's case, and he gave testimony tending to prove, that the rock which caused the injury fell from the wall in a portion of the stope which had been for some time open; that an old wall, and especially if it is unsupported, is more likely to be unsafe than a new one; that of this fact he had no knowledge, and upon the subject had received no instruction or warning; that in the evening before he was injured his partner had noticed, or thought he had noticed, the sound of rock falling into or above the mill in which the plaintiff was afterwards injured, and had called the matter to the attention of the shift boss, and had been assured, in plaintiff's presence, that the mills in which they proposed to work and had been ordered to work were all right and safe. Plaintiff himself claims not to have heard any falling rock, and the testimony of his companion is to the effect that he was unable to locate the place

where the material was falling with any precision, and that small pieces only were dropping; but the fact that some pieces of rock were falling in the vicinity, to plaintiff's knowledge, seems to have been considered important at the trial as affecting plaintiff's duty to take care, and the alleged assurance of safety given by plaintiff's superior a matter of importance as affecting plaintiff's duty to discover for himself whether the place in which he was injured was or was not dangerous. The opening statement made by counsel for defendant to the jury may be employed as indicating pretty well the issues of fact which are contested. He said:

"Now, the facts as to the condition of the particular mill where this man was hurt seemed to be wrapped up in a whole lot of confusion, and we want to straighten that out, and we will show you that, as a matter of fact, any mill in this stope had portions of the hanging wall that were old, that is, were comparatively old, and also portions of the hanging wall that were comparatively new, because in working out this ground they do not start at one stope and clean up one mill. They would start at the bottom and clean out all the mills, and go back again and work; for instance, at No. 2 mill they might have worked the bottom of that and exposed that a month or two before they took the next 20 or 30 feet further up the mill. That is one of the things.

"We will show you in the testimony we will introduce, we will also show you that there is unusual care and very careful attention paid to the condition of those stopes and places where men are working in these mines; that there are men whose work it is, timbermen working all day in these places, to keep the place in good, fit, and safe condition as that men won't get injured; and that, in addition to that, there are certain employees of the company who visit these places regularly all the time, every day twice or three times a day, and look them over to see that everything is all right, and, in case the timbermen or miners have overlooked anything that isn't safe, their attention is called to it, and it's made safe.

"In other words, we are going to show you that, instead of sending men into a dangerous place to work, the policy of the company and custom has been to take every possible care to see that the working places of its men was made as safe as it reasonably could be made.

"Now, we will also show you that the hanging wall, for instance, in the Calumet & Hecla conglomerate vein, that the vein is not the same all over the mine; that the hanging wall in all the stopes is not exactly the same; that there are places, stopes, where the hanging wall is bad, and there are places where it is better, and there are places where the hanging wall is very good; and that it isn't the necessary thing, nor the custom, nor good mining, after a place is timbered, after a stope is timbered, to lace it over or put lagging in in every instance. It isn't necessary where the hanging is good. There are places where the hanging isn't good that it becomes necessary to, in order to insure the safety of the men, to put lagging across to keep up this loose rock. But there are a great many places where that isn't necessary, and it isn't particularly good mining to do it in those places. They are taken care of in the ordinary way as the miners do, where they see a piece of loose rock, take it down. It is just as reasonably safe as it could be made under the good practice of mining, and as to that we will show you that this particular stope was one of the good stopes in that mine; that this place that was not lagged was the good hanging, and didn't require any lagging, and this will be by the testimony of the men who know something about the mining business, and have been in it for a great number of years; and that, if there was any place in that stope where the hanging was bad and needed to have that, the lagging was there.

"We will show you, too, in the matter of wall plates —there is testimony in the case now that there was no wall plates, and that there should have been; that the system of timbering now is not the same as the man who testified that where they used square timbers they put these wall plates across, but where they have a battery of several or three timbers it isn't necessary to have the wall plates in order to make the place safe.

"Now, coming down to the particular facts in this case, it is claimed by one of the witnesses that the shift boss went into that place and spoke to these men, and that this particular witness, Paninen, told him that the place was bad, and that the shift boss sent him in there without any sort of warning at all, but simply sent them into a place that was bad, and that he knew was bad.

"We will have this shift boss here as a witness, and he will tell you just whether or not he said or gave any such directions to those men at that time. He will tell you that he did not give any such directions to those men at that time. And he will also show you that men working in a place like the one where these men were working, and hearing rock fall or in any other way becoming aware that the place was getting dangerous, under the custom of the mine, and under the rules that were understood, and that were generally understood, if that happened in the daytime when the timber gang was working, that it was their business to notify the timber boss of the condition of the place where they were working, and it was his duty to fix it up, but the timber gang does not work on night shift, and this accident happened at night; that there were four miners working at short distance from where these men were, and that it was their duty, when they noticed anything wrong in the hanging, or became aware that it was dangerous at all, to call these miners down and have them fix it up; that that was one of the things they should have done, not only for their own safety, but the safety of everybody working in that stope; that they did not do this, but continued their work."

The negligence of defendant asserted is:

"(1) Failure to properly, skillfully, and sufficiently timber the mill in question; (2) failure to properly, skillfully, and sufficiently inspect it; (3) failure to properly, skillfully, and sufficiently bar down loose, shaky, and unreliable rock from it; (4) failure to warn the plaintiff (a) that the hanging in it was old, and therefore more dangerous, (b) that loose, shaky, and unreliable rock existed in the mill, and (c) that the mill was insufficiently secured; (5) ordering him

into an unsafe place, and assuring him that it was safe."

The jury returned a verdict for the defendant, upon which judgment was entered. Some errors are assigned upon rulings made during the cross-examination of plaintiff; but, as we think there was no abuse of discretion on the part of the trial judge, we notice only those errors which are based upon the refusal of the court to instruct the jury as requested by the plaintiff and the charge as given.

It is complained that plaintiff's twelfth and thirteenth requests to charge were not given. Those were:

"(12) If the duty of inspecting plaintiff's working places to determine their safety as such was no part of his duty, but was imposed by defendant upon another or others than the plaintiff, then defendant was responsible for the conduct of such other or others in and about the inspecting of such working places, and defendant, by and through them, was under a higher duty of discovering defective and dangerous conditions in and about plaintiff's working places than plaintiff was. Plaintiff would be chargeable with knowledge or notice of only such defective conditions in and about his working place as he actually knew, or by reasonable use of his senses while giving due attention to his own duties he should have discovered without any particular inspection; while those upon whom the duty of inspection was imposed would be chargeable with notice of all such defects and dangerous conditions as they actually knew, and also of all such defects and dangerous conditions as could and would have been discovered by such a reasonable inspection and search for defects and dangerous conditions as a reasonably careful, skillful, and prudent person exercising ordinary care to discover defects and dangerous conditions in and about the working place would have discovered therein.

"(13) If you find from the evidence that the risk of plaintiff's injury was one which was not ordinarily incident to his employment, but was a risk which would have been obviated and avoided had defendant

performed its duties under the rules stated in these instructions, then I charge you that in order to defeat plaintiff's recovery on the ground of his assumption of the risk, the burden would be upon defendant to show by a fair preponderance of the evidence that the plaintiff knew of and appreciated such risks, or should have known of and appreciated such risks."

The twelfth request was given in substance, and the charge was rather more favorable to the plaintiff than the request. The court said to the jury, among other things:

"Under his contract of employment, the plaintiff was not required to make any inspection, examination, or test of the hanging wall of the mill in which he insists he was injured to discover whether or not it was a safe place to work, or to bar down or timber against any loose rock in such hanging wall, and he is not chargeable with contributory negligence in that he failed to make any such inspection, or to bar down, or to timber. The defendant assumed and was charged with the duty of all such inspections and testing of the hanging wall of the mill, and of all such barring down of any and all loose rock therein, and of timbering against any and all loose rock in the hanging wall in question, as you shall say from the evidence was reasonably necessary for the protection of the plaintiff while he was working thereunder, and the persons, whether shift boss, timber captain, timbermen, or other person charged by the defendant with the duty of making such inspection, and of barring down or timbering against loose rock found in the hanging wall, were not, while engaged in the performance of such duties, fellow-servants of the plaintiff, but were vice-principals, and the defendant would be liable to the plaintiff for the consequences of any carelessness, or unskillfulness of any and all such persons in failing to perform or in the manner of performing each and all of such duties.

"If you find from the evidence that the place in which the plaintiff was when injured was a permanent part of the mine, and the hanging wall above the mill was a permanent wall, and that on the day of the plaintiff's injury the rock which caused the injury

was in the hanging wall of the mill, and was in such a place, state, or condition that it was liable to fall and injure a person who would be at the place where plaintiff was when injured, and that the defendant knew of that fact, or could and would have known of it if it had exercised ordinary care, skill, and diligence to ascertain the condition of the hanging wall, and that the plaintiff was excusably unaware of it, and that the defendant, by and through its captain or shift boss, ordered or directed the plaintiff to work in the mill or place at which he was working when injured, and that before plaintiff went to work at that place his partner, in his presence and hearing, called the attention of the shift boss or captain to the condition of that place, and expressed fear or doubt as to its safety as a working place, and that the captain or shift boss, upon his attention being so called to it, stated or represented to, or assured plaintiff's partner in plaintiff's presence and hearing, that the place was all right, and ordered plaintiff and his partner to go to work in the mill on pain of discharge, and that plaintiff depended and relied upon such statements, representations, and assurances of the captain or shift boss, and was by such statements, representations, and assurances led to believe that the place was safe to work in, and that an ordinarily careful and prudent person in plaintiff's situation would have been led to so believe by such statements, representations, and assurances, and that because of such statements, representations, and assurances plaintiff went to work in that place, and while plaintiff was working therein, and in the exercise of ordinary care for his own safety, and reasonably depending and relying upon those statements, representations, and assurances, he was injured by the rock in question falling and striking him, then the plaintiff would be entitled to recover.

"The plaintiff was not guilty of contributory negligence if at the time of the occurrence of his injuries he was exercising ordinary care and prudence in the performance of his work, having regard of the situation in which he was working, and he conducted himself the same as a person of ordinary care and prudence, under the same and similar circumstances, he was only required to use and exercise ordinary care,

and, if he did that, then he was not guilty of contributory negligence."

But it is said that in other portions of the charge that portion which has already been set out was so qualified, and the entire charge was so argumentative, so favorable generally to defendant, and so unfavorable generally to plaintiff, that it did not, upon the whole, present fairly to the jury the rules respecting the duties of plaintiff and defendant under the circumstances. In this criticism of the charge, various portions of it are separated from the remainder, as, for example, the following:

"Now, gentlemen, at the outset of this case and all through this case, I wish the jury to bear this in mind, that the plaintiff is not entitled to recover a verdict in this case simply because he suffered an injury while in the employ of the defendant. There are many purely accidental injuries for which the employer is not liable. In order to recover damages, the burden is on the plaintiff to show that the accident by which he was injured was due to some fault or negligence of the defendant set forth in the plaintiff's declaration, and that he himself was free from any fault or negligence which caused or contributed to his injury. All mining, I think we of the mining country may say, is dangerous—absolute safety in mining seems to be unattainable—and the employer is liable for the consequences, not of danger, but of his negligence."

But this part of the charge was immediately followed by the following:

"The defendant in this case, the mining company, was obliged by the law to furnish the plaintiff a reasonably safe place to work. The defendant was not bound by law to furnish the plaintiff a place to work which was absolutely safe, but a place which was as reasonably safe as the nature of the work would admit, and which was free from all dangers which were not open and obvious to the plaintiff, and capable of being appreciated by him."

Another portion of the charge criticised is:

"But the law also is this: That the servant—and this rule of law is binding on the plaintiff in this case —that the servant must look about him, must observe his surroundings, and he is chargeable with notice and knowledge of all dangers which were open and apparent to a person of ordinary understanding, and if and unless you are satisfied by a preponderance of the evidence in this case that the dangers were not known to the plaintiff, or by the exercise of ordinary care and prudence for his own safety would not have been known to the plaintiff, then he would [not?] be guilty of contributory negligence. If he knew, or in the exercise of ordinary care to observe his surroundings, to look about him, to see and to know what was happening about him, if he failed in that respect, then he would be guilty of contributory negligence, provided he continued to work in that place."

And the following:

"But, if he actually knew, or if in the exercise of ordinary care to look about him, and to observe what was happening, particularly after the captain had left, and unless the jury are satisfied that, if he had looked about him, he would not have actually known the place was dangerous, then he would be guilty of contributory negligence."

Of these and some other portions of the charge upon the subject of plaintiff's contributory negligence, it is said in the brief for plaintiff:

"Here are seven distinct paragraphs on the subject. The court first told the jury that the burden was on the plaintiff to 'show  *  *  *  that he himself was free from any fault or negligence which caused or contributed to his injury.' Then (with especial emphasis) he required plaintiff to 'look about him' and 'observe his surroundings,' and charged him with 'notice and knowledge of all dangers which were apparent to a person of ordinary understanding' (no mention made of the necessary qualification 'in the exercise of ordinary care'), and told the jury that, if he did not, he would be guilty of contributory negligence. Then (in effect) he told them that, in order to avoid the imputation of contributory negligence,

provided he continued to work in that place, plaintiff was bound 'in the exercise of ordinary care to observe his surroundings, to look about him, to see and know what was happening about him.' Then he said: .

 " 'If, in the exercise of ordinary care to look about him, and to observe what was happening, particularly after the captain had left, and unless the jury are satisfied that if he had looked about him, he would not have actually known the place was dangerous, then he would be guilty of contributory negligence.'

"These instructions were erroneous. The court required the jury to be satisfied that, if he had looked about him, he would not have known that the place was dangerous. The fact that plaintiff was expected to spend all of his time at shoveling rock was disregarded. The assurance of safety and order given by the captain was disregarded. It was assumed that if he had looked around, he would have discovered the danger; whereas, even his partner does not claim that by looking around he discovered anything wrong with the place, but only that he heard some small insignificant rock fall. If there were rocks falling, as claimed by his partner, looking around would not do any good, for it was so dark that they could not be seen. The noise created by their falling would be drowned by the machines, and by the work of the plaintiff or the other trammers handling rock with shovels. It does not appear that the rock which his partner heard fall were large or dangerous; but the evidence is to the contrary."

It is supposed that a charge to a jury will be given and understood in connection with the issues which have been presented and the testimony which has been produced upon those issues, and no analysis of the charge can be made which dissociates it from the issues submitted to the jury. As has been stated, plaintiff relied, in part, upon an assurance of his boss. As testified to, the assurance was not a general but a special one, called out by the information given the boss by plaintiff's partner that he had heard falling rock in the stope. That any such assurance was given is disputed by the mining boss, and plaintiff's partner

in his testimony makes little account of the noise or
noises he heard; but plaintiff relied upon the assur-
ance, and it must be assumed that he relied upon it
because, but for the assurance, it might be said that
his conduct in entering the mill under the circum-
stances was negligent. The jury might have found
that no assurance of the safety of the stope was given
to plaintiff by the mining boss. It is admitted that
the mining boss had gone away before the plaintiff
began work in the mill in which he was injured. As-
suming that rock had been falling in the vicinity in
the course of the evening, and that no assurance of
safety had been given to plaintiff and his partner,
what, then, was the duty of plaintiff? The court was
required to instruct the jury with respect to the vari-
ous phases of the testimony and the contentions sub-
mitted to the jury, and, while it may be said that some
portions of the charge, detached from the remainder
of the charge, seem to impose upon plaintiff the duty
to exercise greater care than was necessary, those
portions of the charge which are criticised must be
read in a connected way, and we are not satisfied that,
taken as a whole, it can be said that the charge was,
upon this subject, erroneous.

Of the thirteenth request to charge, and of the
charge given, it is said that the court gave to the jury
a wrong rule upon the subject of the burden of proof,
and in this connection it is argued in the brief that
nothing that plaintiff did had a tendency to bring
about his injury; that he was therefore not guilty of
any contributory negligence, especially in view of the
assurance of safety and the order to proceed; that he
did nothing more than to work in the place—

"Which was not so openly, obviously, and immi-
nently dangerous as to make it reckless on his part
to do so. The only way (if any) in which his recovery
could be legally debarred was by his assumption of
178 Mich.—42.

the risk in case the jury disbelieved the testimony as to the assurance and order. And the injury having resulted from a risk not ordinarily incident to his employment, the burden was upon defendant to prove by a fair preponderance of the evidence that he understood and appreciated it."

The court charged the jury upon the subject of the burden of proof in several places during the charge, and it is said that the following portion emphasizes the rule and the error:

"Now, then, bear this in mind, in connection with the obligation of the plaintiff to make out his case by a preponderance of the evidence, that the defendant is not obliged under the law to prove to you that it made an inspection of that hanging wall. The defendant is not obliged to bring its witnesses here to prove to you that it barred down the loose rock from time to time, or to prove to you that it took any measure for the protection of the plaintiff while he was at work in that mill. The obligation under the law rests upon the plaintiff to prove to you by a preponderance of the evidence that the defendant did not do these things, and I am saying this to you and emphasizing it in view of the range which the arguments have taken."

It is undoubtedly the rule that, where a servant shows that he was injured in consequence of an unusual risk, due to his master's negligence, the master has the burden of showing that the servant knew of the unusual dangers, and this is the rule relied upon by plaintiff's counsel. But the rule only becomes applicable, as its statement indicates, in a case where the servant is injured on account of some risk unusual and unknown. What plaintiff claims, in substance, is that he was not furnished a safe place in which to work, and a further claim that he was set to work in an unsafe place upon an assurance that it was safe. Assuming that he himself exercised proper care, he was entitled to recover if he established either proposition, and as to either proposition the matter was

fully and completely taken care of by a portion of the charge in which the court said:

"The plaintiff claims the defendant was negligent, *first,* in failing to test and inspect the hanging wall of the mill; *second,* in failing to warn the plaintiff, before putting him or allowing him to work in the mill, of the existence in the hanging wall of the mill of loose rock which was liable to fall from or roll against the plaintiff while he was at work in that mill; *third,* in failing to bar down loose rock which the plaintiff claims existed in the hanging wall of that mill. In failing to brace and protect the hanging wall so as to prevent loose rock dropping therefrom, by timbering, and in ordering the plaintiff to work in the mill, and assuring him it was safe for him to work therein when in fact, as the plaintiff claims, it was not safe for the plaintiff to work in the mill. This, in substance, is a statement of the negligence which the plaintiff claims the defendant was guilty of.

"If you find by a preponderance of the evidence that the plaintiff was ordered, required, or expected by the defendant to work in the No. 3 mill, and that the hanging wall of that mill was a permanent wall —that the company had got through working on that wall is what we mean by a permanent wall—and if you further find it was reasonably necessary, for the safety of the plaintiff while at work in that mill, that the hanging wall of the mill should be tested, inspected, and examined from time to time to ascertain whether it was reasonably safe for the plaintiff to work under, it was the duty of the defendant to cause such hanging wall to be tested, inspected, and examined with such reasonable frequency, skill, and care as was reasonably necessary for the safety and protection of the plaintiff while he was working under the wall, and the defendant would be chargeable with knowledge of all such loose, shaky, and unreliable ground which existed in the hanging wall, and which would have been discovered by such reasonable, careful, skillful, and diligent inspection of the wall, and of the existence of any loose, shaky, or any unreliable ground liable to fall or roll against the plaintiff while he was at work in the mill, or any characteristic or condition in the mill which rendered

it dangerous for the plaintiff to work therein, under the hanging wall, of the existence of which the defendant knew, or in the exercise of due and ordinary care in the inspection and testing of the wall it should or would have known, it was the duty of the defendant to warn the plaintiff before putting or permitting the plaintiff to work in that mill, and under that hanging wall.

"Again, if you find by a preponderance of the evidence that the hanging wall of the mill could have been kept in a reasonably safe condition for the plaintiff to work thereunder by a reasonably careful, skillful, and diligent testing and inspection of the hanging wall, and by pinching or (as the miners say) barring down, as often as the same was discovered by such testing and inspection, of loose rock in the wall which was liable to fall and falling to injure the plaintiff, then it was the duty of the defendant to carefully, skillfully, and diligently and reasonably pinch and bar down from such hanging wall all such loose rock.

"Again, if you find by a preponderance of the evidence that the hanging wall above the mill No. 3 where the plaintiff claims he was injured could only be made and kept in a reasonably safe condition for the plaintiff to work therein by timbering the same, then it was the duty of the defendant to carefully, and skillfully, and diligently brace and timber the hanging wall, so as to, by means of such timber, render such wall reasonably safe for the plaintiff to work under.

"If you find that the defendant failed to perform any duty or duties which, under these instructions, it owed the plaintiff, and that the proximate cause of the injury to the plaintiff was the failure of the defendant to perform any such duty or duties, then the plaintiff would be entitled to recover, provided he was not himself guilty of negligence which caused or contributed to his injuries."

The court, whether it was necessary or not, seems to have had in mind the rule that, where a duty is assumed by the master, or is imposed upon him by contract, or is customarily performed by him, it becomes a nondelegable one. I fail to find in the charge

support for the criticism that the real issues and the applicable rules of law were not stated in the charge. Nor does it seem to me that it is open to the criticism that it is argumentative, or that, taken as a whole, it is favorable to the defendant and unfavorable to the plaintiff.

No reversible error having been pointed out, the judgment is affirmed.

MCALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.